All righty, Mr. Seltzer. Good morning, Your Honors. Good morning. Good morning. Your Honors, this is an appeal from two dismissals on the pleadings, one of which was a dismissal of the individual named Plaintiff's Claims. Can you speak up a little? Sorry, Your Honor. One of which was a dismissal of the individual named Plaintiff's Claims and the other which was where the court struck the class allegations in the complaint based on the pleadings. Because Judge Hughes in the lower district court refused and ignored five separate requests by the plaintiffs over a course of 18 months to take both merit-based and class-based discovery, I will explain to the court why these dismissals were wrong and why they were premature. The other side says that Judge Hughes did not refuse any discovery that you requested. And that's not true at all, Your Honor. And I think at the outset it's important that I go through the history of the case that I don't think was emphasized in the briefs enough to give the court context of what really happened. So on September 8, 2020, there was a status conference, the first initial status conference before Judge Hughes. And in that conference, the judge refused. We asked the judge, can we go ahead and take some discovery? The plaintiffs already filed the Rule 12b6 motion to dismiss the complaint and strike the class allegations. And we asked Judge Hughes, there's a lot of issues of fact that are raised in these motions because the plaintiffs, the defendants in the case submitted an affidavit with the motions of a former employer talking about various website changes, when those were made, about the different corporate entities. So we requested an opportunity to depose that employer. His name is Joshua Ketter. And the judge denied our request and he adamantly stated, which is on the record of Citation 3791, he refused to allow us discovery until we provided, us being the plaintiffs, more information about our own plaintiffs and the history of their purchases. So the goal of the judge really was to, in the lower court, was to trim our pleadings down. He thought they were too long. Our complaint was about 90 pages. And his goal was to get it down to 40 pages. So really what he was doing was focusing on how he could do that. And one way he thought he could do that was by forcing us to give more information about our plaintiffs. And the other way was we named seven different Ashley Black companies as defendants and he wanted us to whittle that down to which one was the appropriate defendant. So as we move forward to November 13, 2020, we opposed, the plaintiffs opposed, defendant's motion to bifurcate discovery. And in our opposition, we specifically requested an opportunity to take merit-based and class-based discovery. Again, the judge denied that request. On January 15, 2021, we opposed plaintiffs' motion to strike the class allegations in the face of the complaint. And in our opposition, we requested that the court allow us to take discovery, both merit and class-based, and the judge didn't even entertain our request. Then on January 25, 2021, there was another status hearing before the court. And again, we requested that the court allow us to take merit-based and class-based discovery based on all these factual issues that were popping up in the plaintiffs' underlying 12b6 motions to brief and class allegations. And the court stated, and this is record citation 3844, he only wanted discovery about our plaintiffs, and he said that any information from the defendants did not count. Now, on March 5, 2021, the parties did exchange some information about the plaintiffs and which corporate entity was the appropriate entity to be named on the complaint. Now, this is an important point, Your Honor, and it goes back to your initial question. On page 5 of the appellee's brief, they said that the judge reviewed these disclosures. The judge never reviewed any disclosures. We submitted a status report and said the parties provided disclosures to each other, and then in that status report, again, we asked the court for us to conduct merit-based and class-based discovery. Now, when you're saying he didn't review the disclosures, he didn't – you're saying that was as to the denial of class status. Clearly, he reviewed something when he found that the individual plaintiffs' pleadings were insufficient. No, Your Honor. The judge used the not review anything besides status reports that were provided to him. Well, where did he get – where did he have the basis for saying, you know, as to three of these California plaintiffs, they didn't plead sufficiently for a certain statute, and to the New York plaintiffs, they didn't, and Louisiana plaintiff violates statute of limitations. All of that was just based on what was already in the second amendment to the complaint. That was filed in November of 21. Well, that's what a 12b-6 is about, is it not? It is, Your Honor, but for whatever reason, the judge wanted more information about the parties. So it actually ties to his ruling on 9b because part of the problem that the judge had was who were the parties that made the statements, the false statements that we allege in our complaint? And the who was provided to us by the defendant way after the second amended complaint was filed per his request, but he never looked at that. He never even gave us an opportunity to amend, which we requested that he do. He didn't even look at that. He just went ahead and ruled on the original motions to dismiss and motion to strike. So there was no opportunity to have any type of – Well, by this time, the case had been going for three years, had it not? A little less than three years. I'd say about maybe two years it has. So really, nothing happened. There was no discovery that went beyond the pleadings. The only discovery that happened was an exchange of information about who the parties were and we gave, Your Honor, a 13-page disclosure to the defendants about detailing in great specificity our clients' purchase histories and experiences with the product. So it even goes beyond what the second amended complaint had, but the judge never reviewed that. And the only thing, the two things that the defendants were supposed to give to us were affidavit that they submitted in support of their motion to 12b-6, and they didn't have the website changes for 2016, so we didn't get anything from that. And then they sent us an email, a one-page email, that told us which party was the appropriate party that should be named in the lawsuit. And that's important because they already had the information about who was the party that was making the misrepresentations. They already had what dates our client purchased the products. And these were things that Judge Hughes took issue with in his rulings when he dismissed the claims under 9b. But, you know, the whole purpose of 9b is to put the other side on notice so they can defend themselves. So there is no surprise here. In any event, the complaint, as is, was very specific. Even without these disclosures. Well, let me just ask you about, I mean, first of all, were you requesting, are you in this court requesting us to reverse and remand the denial of class certification on anything other than fraud and consumer protection statutes? In other words, would it be accurate to say that you have waived the plaintiff's express and implied warranty claims and unjust enrichment?  You didn't . . . well, I'm talking about appellate procedure. You did not brief his rejection of the plaintiff's express and implied warranty claims, statute of limitations and redivision as to Louisiana and unjust enrichment. I didn't see briefing on appeal. You're correct. A hundred percent correct. Then you waived those claims. We have waived those claims. Okay. The point I was making is we told Judge Hughes at the hearing because he was grappling with this whole idea of how can I manage a national class. And we said to the judge, let's make this easier for you. And what we will do is we will only submit a claim based on the seven subclasses to make this much more manageable. So we took a step back, which is the reason why it's not in the brief. So we wanted to simplify this, realizing that it is difficult at times to apply a national class for various reasons. So what we did was we narrowed this down to seven subclasses. And all of these . . . most of the statutes in these states have pretty similar elements. I mean, ultimately, it's just a reasonable consumer standard. Could a reasonable consumer be deceived by the representations that were made? So I think . . . That's not fraud. It's not fraud. It's a little bit less of a standard than fraud, but that's how these consumer protections . . . So may I take it that you are not challenging the district court's finding that your plaintiff's pleadings with regard to fraud under 9b were insufficient? No, Your Honor, we are challenging that because Judge Hughes applied a 9b standard based off of the consumer protection statute. So he thought those statutes rose to the level of fraud. So in other words, he used . . . What's your best case for saying they don't? I don't know the answer to this. Yeah, well . . . It says deception, and normally you have to plead allegations reasonably specifically. The only one definitive on that, Your Honor, is the New York GBL 349 and 350 claims. Yeah, but that's wrong. Are you aware of the Supreme Court's decision in Shady Grove? Yes, Your Honor, yes. So how do you get around that, 9b? Well, I don't think . . . again, and we didn't really argue this with the exception of the New York statute because . . . No, I know. You didn't argue any of the state statutes in the district court, right? Well, no, we did, Your Honor, because again, it all comes to the heart of reliance. The appellees raised the issue that somehow we waived any argument regarding the elements of reliance in these state statutes, but that's not true at all because the whole purpose of the briefing and our motions in opposition to Strike were talking about how reliance, why reliance is not a factor when it comes into play with Rule 23b-3 in these cases because really this is just about a uniform misrepresentation, and if we had the ability to take discovery beyond the pleadings, we would have been able to establish that, and then we could have dealt with predominance and reliance and all those types of issues, but we never even had a chance to get there. I mean, we're just focused here on the pleadings, and we didn't even have an opportunity to get out of the gate to do any of that, to do any of it, so regardless of what standards apply to the Second Amendment complaint, it's precise. It's detailed. It has . . . Well, let me just say, I mean, insofar, if we were talking, and I reserve the question about consumer fraud, but if we were talking about classic fraud, and I don't know that there are variations among the states, Rule 9b says you have to specify the who, what, when, where of the misrepresentation, and here your claim of misrepresentation is to the effect that, with only a couple of exceptions, to the effect that it will assist weight loss, to the effect that cellulite will be reduced, to the effect of pain relief. Now, I am not aware of a sufficient fraud complaint that says, well, it's to the effect of such and such, as opposed to quoting the statement so that the court can take a look of whether it is a misrepresentation. Your Honor, regardless, again, of the standards applied, I think even the plaintiffs that pled to the effect of it is still very precise and detailed because they talk about what the representation was that they recalled. No one can recall exactly what they saw three or four years ago from a purchase, so they're recalling to their best of ability what they saw, and the defendants know what they saw. Yeah, but if this were a securities fraud case, you would say there is a material misrepresentation because the company alleged that its business had increased by 10% in the past year when in fact it was material that half of the clients had abandoned it. You know, there would be facts, not just, well, we thought it was cellulite reduction. Don't we all? But a much different analysis with a securities case than a case like this. But where's your . . . give me a case that . . . and I understand you argue that 9B has to be context specific and all that. What's your best case in this generic kind of beauty product case? I'm not aware, Your Honor. I don't have a best case for you because I'm not aware of any case that dismisses a complaint on the pleadings with this level of specificity. I have never seen . . . I've been defending and prosecuting these types of cases for 25 years, and I have not seen a case dismissed with this precise level of specificity in the complaint, especially when the defendants had the knowledge. They know what they advertised. They know what they said on the website, and we didn't even have a chance to get the information on the website because they didn't even have the pages.  It's what the court and a jury can evaluate from the facts. That is true, Your Honor, but again, we also submitted a detailed 13-page disclosure. Per judge's request, that even goes into greater specificity than what the Second Amendment . . . Give me an example of what your disclosure said. It's not part of the record, Your Honor, and I would submit that perhaps . . . I don't know why. None of the disclosures are part of the record, and I guess I would request here an opportunity . . . Well, let's assume that they were. That seems like a strange anomaly. Right. So, assume that they were. Then, what did you disclose in your disclosure that you say the judge didn't read and so on? Right. It was more precise. Well, it goes into more precise detail about what they saw on the website, more precise detail in terms of the representations that they saw on the website. So, it's very detailed and oriented, much more detailed than what we already have in the Second Amendment complaint. So, it . . . I think it would sort of take away that concern of to the effect of or whatever somebody might have. But again, you know, even . . . you know, we do believe that even the Second Amendment complaint is sufficient, but there's a whole 13-page disclosure that the judge never even looked at, even though he ordered us to do it. He ordered you to produce it. He ordered us to exchange it with each side. So, all that was submitted to the court was a status report telling him, hey judge, we think we need an opportunity now to amend the complaint. And then right after that, we got a motion that struck our class allegations and granted the 12B6 motion to dismiss. Let me . . . I was looking. Where is your law firm headquartered? I'm in Poughkeepsie, New York. Okay. It's my first argument before that. Just wondering.  Oh, there we go. Thank you. All right. You have time for rebuttal. Thank you. Thank you. Ms. Guglielmi? Good morning, and may it please the court. If the district court makes the correct decision in dismissing all the plaintiff's claims under Rule 12B6 and Rule 9B, then this court does not even need to reach the issue of class certification or determine whether or not the district court's orders allowing or disallowing discovery were correct. But I'd like to talk about discovery just for a minute before I dive into the opinion on dismissal. Here, even if plaintiffs have been given discovery, it would not have helped them answer the motion to dismiss or the motion for class certification because the underlying issues in both of those motions were legal-based. With respect to the motion to dismiss, the underlying issue was whether or not plaintiffs pleaded their complaints with enough sufficiency or particularity under Rule 9B. And plaintiffs do not generally get discovery on that issue. Those are pleading allegations and pleading deficiencies. Turning to the motion to strike, the main argument plaintiffs make on appeal is that fraud claims and, therefore, it wouldn't prohibit commonality or predominance or some of these other factors under Rule 23A and B to be present. But that is in and of itself a legal argument, and it was never made before the district court. So plaintiffs have not identified any discovery today that would have helped them overcome or oppose the motion to strike. Just stating generally, the court didn't give us discovery. And, you know, as a result of that, plaintiffs were injured. That's not sufficient because the two motions at issue and the reasonings underlying those motions was law-based and legal-based. So, again, discovery would not have helped plaintiffs. So just getting back to the main thrust of your argument, you start out with the 9B specificity issue. Do you—I thought—now, maybe I've misunderstood this—I thought the parties agreed that, with respect to the New York statute, the 9B specificity requirement didn't apply. Is that right or wrong? We did not—we did not push back against that statement in plaintiff's briefs. We did not push back against it. But to the extent that Rule 9B requirements apply to those statutes, then, obviously, even those statutes would be deficient under Rule 9B grounds. But are you making that argument on appeal? Am I making the argument that— Yes, I think the two New York statutes are still subject to the specificity requirements of Rule 9B. And you're making that argument in your brief? I'm not quite sure that we— I think it was made in one sentence. It didn't—you didn't cite Shady Grove. Okay. I don't know that we discussed it very much in our— I'm sorry. Are you aware of Shady Grove? Yes, Your Honor, recently. So, I'm just trying to get at what is the order of our decision-making because the issues in the parties' briefs are presented in different order, right? They talk about Rule 23 first and then 9B and puffery. You all start out with—and you start out your argument here by saying, well, you can deal with the 9B issue and these other sort of 12B6 issues so we never have to get to the Rule 23. I'm just trying to understand the order in which you think we should decide this case. Okay. I understand you now, Your Honor. Essentially, we should decide this case by looking at the opinion on dismissal first. All of the claims are subject to the Rule 9B pleading with particularity requirements. Pursuant to Shady Grove, also the New York— the two New York statutory claims would be subject to the 9B heightened pleading requirement. Okay. So you think we should look at all the claims and run them through 9B and see if they're specific enough, who, what, when, where, all that? That's correct. And what the court should first do is look at whether or not the pleadings are sufficient under 9B and whether they meet those heightened pleading requirements in terms of the content and the who, when, where, and how and why. And then second, the court should look at whether or not the claims constitute puffery, some of these claims that are alleged. And then finally, if the court determines that the motion to dismiss was correctly decided, then it need not reach the motion to strike. Okay. So suppose—so we're sort of running them through the gauntlet of that first issue and the second issue. Suppose some of them survive, those two. Then we have to get to the Rule 23 issue. And the district court's—the rationale that the district court relied on was reliance, right? The district court said, well, reliance is individualized, and so therefore it can't meet commonality. Maybe it's predominance. If we got there, would we have to run through the individual state sub—the state laws and the subclasses and say, do these state claims require individualized reliance? Yes. We believe that's what the district court did in its order-striking class. The district court found reliance to be a key element that many, if not all, of the plaintiffs would have to prove, and that would have to be proven on an individualized basis, and therefore commonality is not present within the class. And possibly, to some extent, the language was broad enough that the district court possibly also ruled on the 23B3 predominance requirement as well. I guess the main thrust of my question was I don't— the district court didn't do a state-by-state or statute-by-statute analysis, did it? It did not do that until the opinion on dismissal. And in the opinion on dismissal on pages, I believe it's 3730 through 3731, it performed that analysis in a different context, but it was analyzing, I believe, the disclaimer and whether this disclaimer would prohibit, I believe. It's been a while since I looked at that page, but it was a different context than the Rule 23A and B certification analysis. But the court did go through the law there, and the court did note that for some states, the consumer fraud statutes within those states required a showing of reliance or some type of individualized showing, whether it be that the plaintiff relied or was exposed to the statement, and for other state consumer fraud statutes, that was not required. And so, again, the opinion on dismissal was entered at or before the time of the final judgment, but after the order striking class. At that point in time, the district court could have gone back if it disagreed with its earlier ruling and undone the order striking class. But we know at least before final judgment, the court understood that some of the claims required reliance and some of the claims did not, but still ended up determining that reliance was an issue for class members that could not be overcome. There's nothing—they say that they offered the court the option of doing subclasses. Was that offer made? What was your response? Did the judge say anything about that? The court did talk about the subclasses in the order striking class, and it made the determination that the main class— subclasses should also be struck. Yes, in the last paragraph. Well, that doesn't mean—yeah, but he didn't— I was aware that normally the courts are not, because I wrote one of the opinions, the courts do not have to grant class action status when the laws of different states differ, but there's no requirement that class action be granted on the basis of subclasses, right? That's correct, Your Honor. All right. So that issue, even if we were to reverse, that issue has not been plumbed at this point? No, Your Honor. I don't believe so. Now let me ask—I have one question about the Rule 9b. Do you have a case—and it's just parties cited a lot of cases, so I may have forgotten it— a case that says that these consumer fraud-type statutes fall within the realm of 9b particularity? Yes, Kearns v. Ford Motor Company. It's cited in our brief. It's a Ninth Circuit case. Which one? Kearns v. Ford Motor Company. Okay. And then there are two other cases that weren't cited in our brief, and I'll slow down a little bit to let you write the names down. Stanwood v. Mary Kay, 941 FSUP 2D 1212. Okay. And then the other one is Corbett v. Pharmacare U.S., and that site is 544 FSUP 3D 996. Corbett and Stanwood, those last two cases, cited to and relied upon Kearns, so Kearns is really the major underlying case. The other two cases are district court cases interpreting Kearns, but all of them involve a review—all of these three cases involve a review of the CLRA and the UCL. As you can imagine, I can't find a single case that analyzes all of the consumer law claims, but the CLRA, which is the California Legal Remedies Act, and the UCL, which is the Unfair Competition Law, those are almost exemplars of all of the consumer law statutes at issue, although the elements may be different from state to state in these consumer law statutes. These are statutes that are considered to be remedial in nature, and so in Kearns, Stanwood, and Corbett, we have very similar underlying allegations regarding the content of the advertisings and then the where and the when, and I'm happy to delve into that a little bit deeper. In Kearns, the plaintiff bought a pre-owned vehicle, and he alleged that Ford's marketing materials and some representations led him to believe that the certified pre-owned vehicles were inspected rigorously by specially trained technicians and that the inspections were more rigorous, therefore the cars were more safe. And he claims that he encountered these representations in television ads, dealership marketing materials, and in statements by dealership salespeople. Again, he brought claims under the CLRA and the UCL, and the Ninth Circuit held there that his allegations were deficient because they failed to specify what the television advertisements or other sales materials specifically stated. So even though he had gone so far as to say, Ford represented to me that these vehicles were inspected by specially trained technicians and then they were subject to the more rigorous inspections, therefore the vehicles were more safe, this was too generalized. Well, that would probably fail under Rule 8, wouldn't it? Yes, Your Honor, it might, but I don't believe the court discussed Rule 8. And then in Stanwood v. Mary Kay, that case involved a Mary Kay customer. She said she was exposed to Mary Kay's, quote, extensive, and this is as detailed as she got in her pleadings, extensive and long-term marketing and advertising campaign touting the company and its business operations as not testing any of its products on animals. Citing the Kearns, I think it was the Central District of California, held that this allegation was insufficient because plaintiff did not plead what the advertising materials stated with particularity. And then in Corbett, finally, in that case, they didn't talk about the content being deficient so much as the when and the where. In Corbett, that was a case involving buyers of dietary supplements containing elderberry. They bought them because they thought it would give them health benefits. It turned out to be not true. And they alleged only the date they purchased the products. And that's exactly what virtually similar to the allegations in this case. Only the month and the year of the purchase of the products was alleged by all of the plaintiffs. Well, suppose apparently one of the plaintiffs said that, no, none of the plaintiffs rely on some statement about FDA approved, correct? None of the plaintiffs relied on the statement that was alleged to be on the website that one or more of the products was FDA approved. And the district court noted this in its opinion on dismissal, that even though that statement might have been on the website, that none of the plaintiffs in their allegations in the second-minute complaint stated they relied upon that statement or claim, and none of them even said they had read it or run across it at any point. And we know, obviously, that some of the plaintiffs did not view the website. I think there were two of the plaintiffs that did not view the defendant's website. Turning to the where, Corbett comes into play again. Here many of the plaintiffs, not all of the plaintiffs, but they identified plaintiffs as a whole identified 14 different sources where they encountered these statements. Many of the plaintiffs were so vague and nonspecific about where they encountered the statements that we can't even determine whether or not a defendant or a defendant's representative made the statement. And those would include statements such as online, online research, research into the product. It could have been from a neighbor on a Facebook page, right? Exactly. It could just be an unrelated member of the public. It's not clear from the allegations themselves, so it's impossible for defendants to respond to those types of allegations. In Corbett, there were similar allegations. These are the dietary supplement purchasers. They claimed they relied on defendants' representations either on the product's packaging and labeling or on TV advertisements or on websites, and that's as specific as they got in their allegations. But the district court held that they had to prove or specify where they saw each of the alleged statements in all of the sources. So even though in Corbett the purchasers were able to describe, I saw false claims, I saw false information on the labeling and packaging, which was attributable to the defendants, they didn't specify for these TV advertisements or these websites what those sources specifically were. And so the district court held that they had failed to plead the where with particularity. So applying that reasoning here, just because plaintiffs alleged that some of the statements were posted on the Ashley Black website, which clearly those types of statements would have been attributable to Ashley Black, as long as it was not a comment or something like that or a review, just because they were able to identify a source connected to defendants with at least some specificity does not mean that they're not required to identify all of their sources, including these six or so general sources, online, online research, discretion group, and things of that nature. Turning to the issue of puffing, the district court does not need to decide whether or not these claims qualify as puffing if it finds that they fail to meet the requirements of Rule 9B. Yeah, but what's your argument on suppose we have to get to it? If you have to get to it, I'm happy to respond to that, Your Honor. The district court held that all of the claims constitute puffing for a variety of different reasons. The statements were not specific enough to be actionable, or they were so exaggerated that a reasonable purchaser would not believe them to be true. And really, all of the vast majority of plaintiffs' allegations regarding the statements they encounter fall into one of those two categories. Statements like virtually eliminate cellulite and 100% guaranteed to eliminate cellulite, those types of statements are so exaggerated as to preclude reliance by plaintiffs because no reasonable purchaser would believe that to be true, that this product rids cellulite down to the last drop. How big is this product? I mean, I saw the picture in the brief, but is it 12 inches, 6 inches? I think it's about this size. I think that's about 9 inches. The multifarious claims are that it will reduce or eliminate cellulite, facilitate weight loss, and relieve pain. I don't think you argued this precisely. I'm setting it up for the rebuttal argument, but it seems to me that anybody who believes one little device can accomplish all those goals is not a real savvy consumer. Yes, Your Honor. The other types of claims about the product do fall into that camp that you describe, claims that are either so outlandish on the one hand or so vague that they are not actionable because there's no way to prove or disprove that this product would reduce cellulite or relieve pain or cause weight loss. And I'd like to also mention that there was a disclaimer on the website that the court noted in the opinion on dismissal, and plaintiffs acknowledged in their second amended complaint that states that all claims and results within the website, that is, are based on years of anecdotal evidence. The company is currently studying claims for scientific validation. So every purchaser, including all of the plaintiffs who purchased the products on the website, would have encountered this disclaimer. And the disclaimer indicates that the claims made and the results reported are based on anecdotes. Anecdotes are not science. Anecdotes are not affirmations of fact. It's basically experiences of the users that were reported to Ashley Black. And finally, briefly, quickly, talking about the motion to strike, at no time in the district court, defendants filed their motion to strike very early on in the process after the case was transferred to Houston. The district court deferred that ruling and itself investigated the underlying claims. It asked plaintiffs to provide additional information in their disclosures about what information they relied on, the who, what, when, and where. Why is that not in the record, if it was provided to the district court? What information are you talking about that was not in the record? It said that 15 pages of additional disclosures are not in the appellate record. I'm not sure why it's not in the appellate record. And honestly, today is the first day that I noticed that, so I apologize. I'm happy to supplement the record to include that information. The district court ordered the exchange of the information, as I understand it. Yes. Was it not submitted to the district court? I had thought it was submitted to the district court as well. But at any rate, the district court wasn't required to order those disclosures. It certainly didn't need to base its ruling on those disclosures because it had the allegations in the second amended complaint. After the defendants filed the motion to strike, they argued that many, if not all, of the class claims would require a showing of individual reliance, and that would create issues for proving commonality and predominance in all of these factors under Rule 23a and b. At that point in time, the defendants put that issue front and center. Plaintiffs did end up responding in, I believe, January of 2021. They didn't ever address that argument directly. They didn't raise this argument that they have raised now on appeal that reliance isn't a factor for some of these consumer fraud claims. Reliance looks different in New York versus Florida or whatever other claims they have asserted. And so I think it's important for the court to consider that when it's considering if the court should reach the ruling on the motion to strike and if the court is looking at whether or not— Well, that's been before, and I know Mr. Schultz won't get a little extra time on rebuttal, but the court must have taken account of the different states' laws in order to rule on the sufficiency of the individual plaintiff's claims. That's correct, Your Honor. And again, we do believe that that— So they must have argued that at some point is what I'm saying. Defendants argued that. Plaintiffs did not, in their opposition to the motion to dismiss, argue that reliance prevented a finding of commonality or finding of predominance. It's not in their motion, including—or in their opposition, including on the pages that they cite to in the report. All right. Did they argue about the—when—at what point—are there two separate motions, one to deny class status and the second one to dismiss the individual claims, or is that one motion? There were two separate motions, Your Honor. All right. Did the second motion raise the matter of individual states' laws, and did they respond on that? To my knowledge, that issue was not raised in response to the motion to dismiss, if that's what you're asking. We know that it wasn't raised in the motion to strike, and to my recollection, it wasn't raised in the motion to dismiss. I believe the court conducted that analysis on its own when it— at least at the time the opinion on dismissal was entered. We see that the court conducted that analysis, and I believe that it prepared that on its own. All right. Thank you. We ask that the court respectfully would affirm the district court's motion to dismiss, and should the court reach the ruling on the motion to strike, that the court would also affirm that ruling. Thank you. Mr. Salter. Three quick points in response. With regard, Judge, to your comments about a savvy consumer maybe not realizing what the product can do, the test isn't about a savvy consumer. It's about what a reasonable consumer would think. And with regard to the disclaimer, that sort of is the central focus of this puffing argument, the disclaimer reads, all claims and results within are based on years of anecdotal evidence. The company is currently studying claims for scientific evidence. Now we don't know when or where that disclaimer was in the website. We were never able to take discovery on that point. But why wouldn't a reasonable consumer look at that and think, if this could happen to somebody else, the results could happen to me. Perhaps the defendants should have put in that disclaimer, this does not guarantee the results that you see. So it is reasonable that a consumer. Isn't there, and this may be totally extraneous, but I thought there was something in there about how the product could be returned for full money back. Your Honor, I think that was done, after our lawsuit was filed, they offered refunds to purchasers. We don't know how the refunds were offered. But that was after the suit was filed. That was after the suit was filed. Okay, never mind. That was after. Now with regard to the order striking the class, the order itself is fundamentally flawed. All the court did was rule on 23A. And what the court has required, this whole idea of what a rigorous analysis is, first you analyze rule 23A, commonality, typicality, numerosity. Then you see if that fits within either 23A, 23B, whether it's a B1 class, B2 class, or B3 class. Here we ask for two classes in the complaint. A B2 injunctive class, which the judge never even addressed. And an injunctive B2 claim doesn't even require reliance, which we've been talking a lot about today. And the judge never even gets to his B3 analysis. So the decision itself is fundamentally flawed. And to me it's an automatic reversible error because rule 23 requires precision and rigor. It's not up for us to sort of connect the dots in terms of thinking what Judge Hughes is trying to do here in this decision. So the whole notion of us waiving reliance because we didn't specifically analyze state by state what each different laws required reliance and which didn't. We didn't even get to that point yet. But let me just say, when you move to Texas, when the case gets moved to Texas, presumably your local council were aware of the Fifth Circuit law that's been extant for about twenty years, that we do not look kindly in the Fifth Circuit on classes that are based on state by state laws. So that should have been part of the consideration on your side from the outset. And it was, Your Honor, which is why we told Judge Hughes at the conference, we will not move for a national class of fifty states. Let's shrink it all the way down to seven states. It's very manageable to have a seven state subclass. It's not uncommon. It happens all the time. And it's not unduly burdensome, especially when these statutes are so similar. But we just never had a chance to get there because there was no discovery. We're not talking about – this would be a different argument. She makes the argument that discovery was not material at this point because all of the issues on which certification turns are basically legal issues. What did you hope to achieve in discovery, precisely, that would have supported the class? Your Honor, the Fifth Circuit is clear, and Castano speaks about that. You have to probe behind the pleadings. Probe what? Tell us what did you want? For starters, what we wanted is why were they marketing the products this way? What kind of consumer surveys did they have explaining what consumers relied on? Well, it seems to me that goes to the merits. That goes to the merits about whether it was deceptive and how many people – and the original class allegations are these plaintiffs bought this product at X time on the basis of ABC representations. So was there anything in the discovery that you sought that would have been more specific about the kinds of representations that these particular plaintiffs and therefore the class may have been relying on or not relying on or whatever? Yes, Your Honor, and that goes to the heart of the case. We weren't afforded an opportunity to take discovery with their marketing people. Why were you saying the product? Is there anything in the record where you specify what the discovery would have been? It never even got to that point because Judge Hughes never entertained that. So we constantly asked in the record for additional merit in class-based discovery, but it never got off the ground. Again, Judge Hughes created a universe here where he just wanted to limit it with the parties. Who is the right defendant and who is the right plaintiff? And then he goes ahead and decides the motion without even considering the disclosures that he ordered us to produce. Have you ever appeared in front of this district judge before? I have not, Your Honor. All right, sir. Thank you, Your Honor. I appreciate it. Thank you very much. The argument will stand in recess until 9 o'clock tomorrow morning. Thank you.